Theo LINNELL, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–88–092–CR.

Court of Appeals of Texas, Austin.

March 22, 1989.

Daniel R. McCormack, San Marcos, for appellant.

Charles Chapman, Crim. Dist. Atty., Michael S. Wenk, Asst. Crim. Dist. Atty., San Marcos, for State.

Before SHANNON, C.J., and CARROLL and JONES, JJ.

JONES, Justice.

A jury found appellant, Theo Linnell, guilty of the offense of aggravated kidnapping and assessed punishment at sixty years confinement. Tex.Pen.Code Ann. § 20.04 (1989). On appeal, Linnell brings two points of error complaining that certain evidence introduced at trial was inadmissible. We will affirm.

On July 20, 1987, at 11:30 p.m. in Hays County, Linnell seized a young woman as she entered her apartment, pointing a gun at her head. After dragging her into the apartment, he blindfolded her and bound her hands. Linnell took the victim to her car and proceeded to a vacant trailer at the Holiday Homes Trailer Park where he raped her at knifepoint. Later, Linnell locked the victim inside the trunk of his car and took her to the Colorado Motel. He registered for room # 12. From this motel room, Linnell began making ransom calls to the victim's mother. Eventually, Linnell told the victim's mother to place $15,000 in a sack and leave it at Calvary Baptist Church. Law enforcement officers witnessed and videotaped the "pick-up" and arrested Linnell immediately thereafter.

In one point of error, Linnell complains that the trial court erred by admitting into evidence items seized from one of Linnell's cars. Linnell argues that the search and

seizure was illegal for lack of either a search warrant or his consent.

The following facts are essential to the determination of this issue. On July 21, 1987, after a series of events, law enforcement officials located the victim in the trunk of Linnell's car. Linnell arrived at the scene when law enforcement officials were trying to pry open the trunk. Linnell led Texas Ranger Maurice Cook into the trailer home where he resided, and into a back bedroom where he pointed to a set of car keys. Cook picked up the keys and proceeded to the car. The keys fit the lock of the trunk but the trunk was jammed. Eventually, the trunk was pried open, and the victim was released. Law enforcement agents arrested Linnell and Ricky Longoria, another resident of the trailer home. Police released Longoria later that same day.

On July 22, 1987, Cook and Texas Ranger Ron Stewart began a follow-up investigation. They went to the trailer park, specifically trailer # 139, where Linnell had been living with Dominga Longoria and her son, Ricky. The victim had mentioned a gun and knife, and since the trailer home was the last known residence of Linnell, Cook and Stewart inquired of the Longorias whether they had ever seen Linnell in possession of these items. At this point, Cook and Stewart did not know that Linnell owned or used a second vehicle.

The Longorias told Cook and Stewart that on July 21, 1987, law enforcement officers had taken both Linnell and Ricky Longoria to DPS headquarters. While at the DPS office, Linnell had asked Longoria to take care of his personal property. Longoria thought that by "personal property" Linnell was referring to his second car and items left in the car and trailer house. Later that same day, law enforcement officials had released Longoria. Pursuant to Linnell's request, Longoria had gathered some of Linnell's personal effects left in the trailer home and given the items to Linnell's sister-in-law.

During the discussion between Cook, Stewart, and the Longorias, Ricky Longoria expressed his desire to remove Linnell's personal things from his second car so that Longoria could give these items to the same sister-in-law. The Rangers discovered not only that Ricky Longoria was taking care of Linnell's personal property at Linnell's request, but also that he customarily drove the car around the trailer park and had access to the car, all with Linnell's knowledge and permission. Determining that Longoria could consent to their search of Linnell's vehicle, Cook and Stewart obtained a statement of consent and release from him. Inside the car, Cook and Stewart found a revolver, a knife, and other miscellaneous items.

Linnell complains on appeal that Longoria could not consent to a search of Linnell's car. We do not agree.

Although a search conducted without a warrant issued upon probable cause is *per se* unreasonable, a few well established exceptions exist. "One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Juarez v. State*, 758 S.W.2d 772, 775 (Tex.Cr.App.1988); *Kolb v. State*, 532 S.W.2d 87, 89 (Tex.Cr.App.1976). A person can waive his protected right to privacy through the consent to search. *Doescher v. State*, 578 S.W.2d 385, 389 (Tex.Cr.App. 1978).

The prosecution has the burden to show by clear and convincing evidence that the consent was freely and voluntarily given. The prosecution must also show that the consent given was positive and unequivocal and was not the result of duress or coercion. *Kolb*, 532 S.W.2d at 90.

Linnell does not argue that Longoria failed to consent to the search of the car or that the consent given was involuntary. Rather, he contends that Longoria could not properly authorize the search because he did not have the capacity to consent to a search.

A third party can consent to a search when he has equal control over and equal use of the premises being searched. Whether the consenting party has the right to use and occupy a particular area to

justify his permitting officers to search that area is a question of fact. *Swink v. State*, 617 S.W.2d 203, 210 (Tex.Cr.App.), *cert. denied*, 454 U.S. 1087, 102 S.Ct. 648, 70 L.Ed.2d 624 (1981); *Lowery v. State*, 499 S.W.2d 160, 166 (Tex.Cr.App.1973); *see also Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969). This rule applies to the search of automobiles. *Sharp v. State*, 707 S.W.2d 611, 617 (Tex. Cr.App.1986), *cert. denied*, — U.S. —, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988); *see Swink*, 617 S.W.2d at 210.

■ In the context of the instant case, the third party, Longoria, was a roommate of Linnell's who testified that he had Linnell's permission to drive the car and had done so on several occasions. Longoria also testified that Linnell had asked him to watch his "stuff," which Longoria understood to include personal belongings inside both the trailer and the second car. The prosecution supported Longoria's testimony by introducing into evidence his written statement. Both Ranger Cook and Dominga Longoria corroborated Longoria's statement and testimony. The F.B.I. agent who arrested Linnell testified that Linnell told him he owned a second car and that Ricky Longoria had access to the car and the items in the car. Finally, the evidence reveals that Linnell voluntarily gave his car keys to Ranger Cook.

Although involving a search of an apartment and not a car, the facts in *Morrison v. State*, 508 S.W.2d 827 (Tex.Cr.App.1974), are similar. In *Morrison*, Mr. Heard led police officers to Morrison's apartment claiming that he possessed stolen merchandise. Heard explained that Morrison was out of town and had given Heard permission to use the apartment. Since Heard did not have a key to the apartment, the landlady had to unlock the door. Upon entering the apartment, the police officers discovered and seized the stolen merchandise.

In both the present case and in *Morrison*, a third party testified that the defendant had authorized him to use the premises. In both cases, the defendant denied giving the third party such permission. The court in *Morrison* stated that such

evidence was sufficient to support a finding of joint use and, therefore, valid third-party consent. *Id.* at 829.

The protection afforded by the Fourth Amendment does not depend upon a property right in the place or item searched. The Fourth Amendment's protection depends upon whether there was a reasonable expectation of privacy in the area or item searched. "That one person's consent may authorize seizure of evidence against another person is concomitant to the reduction in privacy one expects when (use of) an area is shared with another." *Lowery*, 499 S.W.2d at 166.

The facts of this case demonstrate that Linnell gave his keys to Ranger Cook and gave Longoria complete and unrestricted freedom over the property, so that Linnell abandoned any expectation of privacy as to any action Longoria might take. *See United States v. Mendoza*, 473 F.2d 692, 696 (5th Cir.1972).

The evidence in the instant case contains sufficient facts to prove that Longoria had the capacity to consent to a search of Linnell's car. Since the search of the premises was made with the voluntarily given consent of one authorized to give such consent, Linnell's contention is without merit and his point of error on this issue is overruled.

■ In a second point of error, Linnell complains that the trial court erred by admitting into evidence a statement given to an investigating officer *after* indictment and appointment of counsel, on the ground that it violated Linnell's sixth amendment right to assistance of counsel.

On July 21, 1987, law enforcement officers arrested Linnell for aggravated kidnapping. On July 22, 1987, Ranger Ron Stewart learned that the kidnapper had been registered at the Colorado Motel, room # 12, on the night of the kidnapping. The registration card for room # 12 showed that the kidnapper wrote in the blank next to "Make of Car" the word "B-r-o-n-w," apparently describing the *color* of the car. On January 8, 1988, Linnell, who had been in jail since his arrest, re-

ceived a court-appointed attorney. On March 22, 1988, Linnell instructed Dominga Longoria to contact Ranger Stewart and request his assistance in transferring title to Linnell's brown car from Linnell to Longoria. Stewart prepared a typed affidavit for Linnell to sign, went to the jail, and obtained Linnell's signature. The affidavit that Stewart had typed included all relevant identification information regarding both Linnell and the vehicle, *except* for the color of the car. The affidavit read in part:

> Be it known to all parties who review this document that I *Theo Linnell,* a black male born 11–17–61, own a —— 1977 Chevrolet 4 door (VIN 31L69U75117569) bearing Texas registration (License Plates) 832 EXD. Furthermore that I, *Theo Linnell* wish to transfer ownership of aforementioned described motor vehicle to one Dominga Longoria, who is a personal acquaintance of myself. . . .

In the blank, Linnell wrote "B-r-o-n-w."

During trial, the State introduced into evidence both the motel registration card filled out by the kidnapper and the affidavit filled out by Linnell.

It is undisputed that at the time he approached Linnell with the affidavit, Stewart knew:

(1) about the motel registration card;

(2) the color of Linnell's car;

(3) Linnell had been indicted for aggravated kidnapping;

(4) Linnell was in jail;

(5) Linnell had court-appointed counsel; and

(6) the affidavit could be introduced into evidence against Linnell.

Furthermore, Stewart testified that:

(1) he did not consult with Linnell's attorney prior to his meeting with Linnell;

(2) he discussed the Linnell meeting with the Assistant District Attorney in charge of the case;

(3) he met with Linnell merely to assist in the car title transfer and he couldn't help it if the affidavit "later became of consequence. . . ."

The State argues that the affidavit was admissible evidence because Stewart did not intend to interview or interrogate Linnell, because Linnell initiated the meeting, and because based on the totality of the circumstances Linnell waived his right to counsel. We disagree, emphatically.

The relevant inquiry with respect to the alleged violations of Linnell's sixth amendment right to counsel is whether Linnell's statement was "deliberately elicited." *Lara v. State,* 740 S.W.2d 823, 832 (Tex. App.1987, pet. ref'd). "Deliberate elicitation" is "intentionally creating a situation likely to induce [a person] to make incriminating statements without the assistance of counsel." *United States v. Henry,* 447 U.S. 264, 274, 100 S.Ct. 2183, 2188, 65 L.Ed.2d 115 (1980).

> Thus, the Sixth Amendment is not violated whenever—by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached. See *Henry,* 447 U.S., at 276, 100 S.Ct., at 2189 (POWELL, J., concurring). However, *knowing exploitation by the State* of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity. Accordingly, the Sixth Amendment is violated when the State obtains incriminating statements by *knowingly circumventing the accused's right* to have counsel present in a confrontation between the accused and a state agent.[12]

---

[12] Direct proof of the State's knowledge will seldom be available to the accused. However . . . *proof that the State "must have known" that its agent was likely to obtain incriminating statements* from the accused in the absence of counsel suffices to establish a Sixth Amendment violation. See *Henry,* 447 U.S., at 271, 100 S.Ct., at 2187.

*Maine v. Moulton,* 474 U.S. 159, 176, 106 S.Ct. 477, 487, 88 L.Ed.2d 481 (1985) (emphasis added). "Therefore, the 'deliberate elicitation' test is satisfied either with proof of the officer's subjective intent . . . or by other evidence that demonstrates that the

officer 'must have known' that his words or actions were likely to elicit an incriminating response from the accused." *Lara*, 740 S.W.2d at 833. Who initiated the meeting at which the State obtained the incriminating statement is not pertinent to the disposition of the case. *See Moulton*, 474 U.S. at 174–175, 106 S.Ct. at 486–487.

The evidence in the present case compels the conclusion that Stewart must have known making Linnell write the word "brown" was likely to elicit an incriminating response from him, and that he knowingly circumvented Linnell's right to have counsel present in a confrontation between the accused and a state agent.

In its brief, the State fails to address the "deliberate elicitation" test and argues instead that Linnell waived his right to counsel because he initiated contact with Stewart. As stated above, the question of who initiated contact is not pertinent to the deliberate elicitation test. However, the State, relying upon two fifth amendment right-to-counsel cases, alleges that when an accused initiates further communication, exchanges, or conversations with the police, he automatically waives his right to counsel. *See Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983); *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The State's reliance on *Bradshaw* and *Edwards* is misplaced for two reasons. First, in both cases, the Supreme Court addressed the question of whether statements had been obtained in violation of the accused's *fifth* amendment rights, not his *sixth* amendment rights, as in the instant case. In fact, the Court in *Edwards* specifically did not address Edwards' sixth amendment question. For a discussion of the distinction between fifth amendment right to counsel and sixth amendment right to counsel, *see Lara*, 740 S.W.2d at 830–35.

Second, even if the fifth amendment standards announced in *Edwards* and *Bradshaw* applied, the facts of the present case are distinguishable from the facts of those cases. First, *Edwards* merely states the rule that an accused may waive his right to counsel if he himself initiates further communication with the police. *Edwards*, 451 U.S. at 484–85. In this instance, the State argues that since Linnell initiated contact with Stewart, he automatically waived his right to counsel. In *Bradshaw*, the Court examined this exact point, stating that merely because an accused initiated communication with police officers and satisfied the *Edwards* rule, this fact alone does not suffice to show a waiver of the previously asserted right to counsel. A court must *first* determine whether the *Edwards* rule is satisfied and *then* whether the accused waived his right to counsel. *Bradshaw*, 462 U.S. at 1046, 103 S.Ct. at 2835.

In *Bradshaw*, the police arrested Bradshaw and during questioning, he asked for an attorney. During the car ride from the police station to the county jail, Bradshaw asked a police officer, "Well, what is going to happen to me now?" The police officer responded that Bradshaw did not have to talk to him and suggested that Bradshaw take a polygraph examination. After taking the examination, Bradshaw confessed to his participation in the involuntary manslaughter offense. The Supreme Court held that Bradshaw's question "evinced a willingness and a desire for a generalized discussion about the investigation." *Bradshaw*, 462 U.S. at 1045–46, 103 S.Ct. at 2834–35. In the present case, on the other hand, Linnell's request to transfer title to his car cannot be construed as a "willingness and a desire" to talk generally about the investigation. The *Bradshaw* court acknowledged that "inquiries or statements, by either an accused or a police officer, relating to routine incidents of the custodial relationship, will not generally 'initiate' a conversation in the sense in which that word was used in *Edwards*." *Bradshaw*, 462 U.S. at 1046, 103 S.Ct. at 2835.

Therefore, even if a fifth amendment analysis were applicable to the facts of this case, Linnell did not "initiate" a "generalized discussion" about the investigation with Ranger Stewart. Accordingly, the State's argument is unpersuasive.

Having determined that Stewart's actions constituted "deliberate elicitation,"

we must proceed to decide whether Linnell waived his sixth amendment right to counsel. *Lara,* 740 S.W.2d at 834.

■ The right to counsel may be waived. Waiver is an intentional relinquishment or abandonment of a known right or privilege. *Robles v. State,* 577 S.W.2d 699, 703 (Tex.Cr.App.1979). For such waiver to be valid, it must be voluntarily and knowingly made. *Hawkins v. State,* 660 S.W.2d 65, 72 (Tex.Cr.App.1983). The presumption is against waiver of fundamental constitutional rights, and the prosecution bears the heavy burden to show that they obtained a valid waiver. *Robles,* 577 S.W.2d at 703; *Lara,* 740 S.W.2d at 834. Whether a defendant has waived his right to counsel is determined by examining the totality of the circumstances. *Williams v. State,* 566 S.W.2d 919, 923 (Tex.Cr.App.1978).

■ The circumstances of the instant case reveal that at the time police arrested Linnell, they read him his *Miranda* rights and took him before a magistrate. Further, because Linnell had been arrested before, he knew he had the right to remain silent. The signing of the affidavit, however, took place on March 22, 1988, eight months after Linnell's arrest. Also, Stewart did not indicate to Linnell that he had prepared an affidavit to test Linnell's spelling of "brown." Stewart led Linnell to believe that the prepared affidavit was only to be used in the transfer of title to Linnell's car. Based on the totality of the circumstances, we hold that Linnell did not waive his right to counsel. The affidavit was, therefore, inadmissible.

■ Having found error, we must now determine whether this error requires reversal of the conviction. The test is whether we can determine beyond a reasonable doubt that the erroneously admitted evidence made no contribution to the conviction or the punishment assessed. Tex.R. App.P.Ann. 81(b)(2) (Pamph.1989).

In this instance, the State introduced abundant evidence in support of Linnell's conviction and punishment for aggravated kidnapping:

(1) The victim identified Linnell as her kidnapper.

(2) The victim identified Linnell's car as the car where she had been held captive.

(3) The victim testified that she was in contact with only one kidnapper throughout the entire incident.

(4) Texas Rangers found the victim in the trunk of Linnell's car.

(5) Shortly before Linnell's arrest, three different police officers saw Linnell driving the car in which they later found the victim.

(6) Numerous law enforcement authorities, including FBI agents, witnessed Linnell grabbing the ransom money at the "drop site" designated by the kidnapper and recorded Linnell's actions on videotape.

(7) The Rangers found the victim's car parked at the trailer park where Linnell lived.

(8) Texas Rangers found Linnell's car parked in between the trailer where Linnell had been residing and the vacant trailer where the victim had been sexually assaulted.

(9) Rangers found Linnell's sunglasses and the victim's panties inside the vacant trailer where the victim was sexually assaulted.

(10) The kidnapper called the victim's mother approximately ten times. The victim's mother testified that the same man made each call. She identified Linnell's voice as that of the kidnapper.

(11) The kidnapper told the victim's mother that he had placed the victim in a hot trailer. The victim was, for a time, left in the vacant trailer next to Linnell's residence.

(12) Some of the telephone calls from the kidnapper to the victim's mother originated from the Colorado Motel, room #12, where the kidnapper stayed one night with the victim.

(13) The manager of the Colorado Motel testified that a black male with a brown car registered at the motel

under the name of "Bill Johnson," listing his automobile license number as "323."

(14) At Linnell's arrest, Rangers found in his wallet a nurse's aide card with the name Theola Johnson Linnell; the license number of Linnell's brown car was "832 EXD."

In light of the overwhelming evidence of Linnell's guilt, we conclude beyond a reasonable doubt that the introduction of the affidavit into evidence made no contribution to the judgment of conviction. With regard to the punishment, the jury could have assessed punishment for this first degree felony at life or at a term between five and ninety-nine years. The jury assessed punishment at sixty years. Under all the circumstances, we also conclude beyond a reasonable doubt that the introduction of the affidavit into evidence made no contribution to the punishment assessed by the jury.

Therefore, the introduction of the affidavit into evidence, although error, was harmless. This point of error is overruled.

The judgment of conviction is affirmed.