TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00347-CR







Jose Gutierrez, Appellant



v.



The State of Texas, Appellee








FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICTNO. 97-630-K277, HONORABLE JOHN R. CARTER, JUDGE PRESIDING







 A jury found appellant Jose Gutierrez guilty of two counts of aggravated sexual
assault and two counts of indecency with a child. See Tex. Penal Code Ann. §§ 22.021 (West
1994 & Supp. 1999), 21.11 (West 1994). Upon the jury's assessment of punishment, the district
court sentenced appellant to confinement in the Texas Department of Criminal Justice-Institutional
Division for fifty years. (1) Appellant presents seven points of error on appeal. We will affirm the
conviction.


BACKGROUND

 In May 1997, N.R., then 12 years of age, told a guidance counselor at her school
that she was being touched and fondled in a sexual manner by her foster father, appellant. The
counselor notified the police, who immediately began to investigate the allegations. 

 Appellant was later arrested and charged by indictment with three counts of
aggravated sexual assault and two counts of indecency with a child. Counts one through three of
the indictment alleged that appellant caused the penetration of the female sexual organ of N.R.
with his finger; that he caused his sexual organ to contact the sexual organ of N.R.; and that he
caused the sexual organ of N.R. to contact his mouth. Counts four and five, addressing indecency
with a child, alleged that appellant touched the breasts and the genitals of N.R. with the intent to
arouse or gratify his sexual desire. At the close of all the evidence during the guilt/innocence
phase of the trial, the district court charged the jury as to all five counts alleged in the indictment. 
The jury found appellant guilty of counts one, three, four and five and not guilty of count two.

 During the punishment phase of the trial, appellant testified on his own behalf, and
admitted his guilt to all four counts for which the jury had found him guilty. The jury assessed
punishment, and the court sentenced appellant to fifty years' confinement for counts one and three
and twenty years' confinement for counts four and five, the two sentences to run concurrently.
Appellant timely filed a motion for new trial, alleging that his confession of guilt at the punishment
phase was involuntary. The district court overruled appellant's motion.

 On appeal, appellant complains that the district court erred in (1) allowing the jury
to take notes during trial; (2) refusing to instruct the jury in the guilt/innocence phase of the trial
as to two counts rather than five counts; (3) refusing to require the State to elect which act it would
rely on for a conviction; and (4) denying his motion for a new trial. Appellant also argues that
he was denied effective assistance of counsel under both the United States and Texas Constitutions
due to the inadequacy of his trial attorney. Finally, appellant asserts he was denied his right to
counsel because an attorney for the State questioned him outside the presence of his attorney. 


DISCUSSION

DeGarmo Doctrine

 The State argues that the DeGarmo doctrine renders any error asserted in
appellant's first three points harmless because appellant confessed his guilt to the charged offenses
at the punishment phase of the trial. In DeGarmo v. State, 691 S.W.2d 657 (Tex. Crim. App.),
cert. denied, 474 U.S. 973 (1985), the court of criminal appeals held that an appellant who
testifies at the punishment phase of the trial and admits guilt to the crime for which he or she has
been found guilty waives any error that occurred during the guilt/innocence phase of the trial. See
DeGarmo, 691 S.W.2d at 661. (2) 

 The accepted rationale for the DeGarmo doctrine was that the purpose of the trial,
to seek the truth, had been served when the defendant admitted guilt to the charged offense. See
Leday v. State, 983 S.W.2d 713, 724 (Tex. Crim. App. 1998) (quoting McGlothlin v. State, 896
S.W.2d 183, 187 (Tex. Crim. App.), cert. denied, 516 U.S. 882 (1995)). Leday drastically
restrained the DeGarmo doctrine by restricting its application to issues that do not involve "[d]ue
process and those individual rights that are fundamental to our quality of life." Id. at 725 (quoting
Morrison v. State, 845 S.W.2d 882, 884 (Tex. Crim. App. 1992)). These rights are deemed to
be more important than the discovery of the truth in a trial, and "co-exist with, and at times
override, the truth-finding function" on which the DeGarmo doctrine is based. Id. at 724-25. The
court of criminal appeals in Leday set forth a non-exclusive list of those values that surmount the
search-for-the-truth-based rationale of DeGarmo, thus allowing an appellant who confessed during
the punishment-phase nevertheless to assert on appeal issues related to such basic guaranties. See
id. at 725.

 Relying on Leday, appellant contends that the DeGarmo doctrine can no longer be
invoked to prevent appellate review of points of error one through three. We disagree that Leday
has overruled the DeGarmo doctrine in all instances. Rather, Leday requires us to determine if
appellant asserts fundamental rights or guaranties, or whether the truth-finding function prevails
to estop appellant from raising them.


Juror Note-taking

 Appellant asserts in his first point of error that the district court abused his
discretion by allowing the jury to take notes during trial. The right to have a court determine
whether to allow a jury to take notes is not a right specifically addressed in Leday, nor does it
parallel those rights in any respect. There is no statutory or constitutional authority in Texas
preventing jurors from taking notes. See Johnson v. State, 887 S.W.2d 957, 958 (Tex. Crim.
App. 1994). Indeed, the vast majority of states, including Texas, permit jurors to take notes. See
Price v. State, 887 S.W.2d 949, 951-54 (Tex. Crim. App. 1994). Texas courts recognize that
under the proper circumstances juror note-taking can be beneficial because it is a valuable method
of refreshing memory and may help jurors to focus on the proceedings. (3) See id. 

 Moreover, the ultimate determination of whether a fundamental right has been
violated is generally reviewed by appellate courts de novo. (4) See, e.g., Hunter v. State, 955
S.W.2d 102, 104-05 (Tex. Crim. App. 1997) (detention under Fourth Amendment); Ex parte
Sheridan, 974 S.W.2d 129, 131 (Tex. App.--San Antonio 1998, pet. ref'd) (double jeopardy);
Jordy v. State, 969 S.W.2d 528, 532 (Tex. App.--Fort Worth 1998, no pet.) (whether statement
is product of custodial interrogation); Rodriguez v. State, 968 S.W.2d 554, 556 (Tex.
App.--Houston [14th Dist.] 1998, no pet.) (voluntariness of written confession). Independent
review has been deemed necessary so that appellate courts can maintain control of and clarify the
basic legal principles presented, unify precedent, and provide a defined set of rules for law-enforcement officers. See Ornelas v. United States, 517 U.S. 690, 697 (1996). In Ornelas, the
Supreme Court, discussing appellate review of a trial court's determination of reasonable suspicion
and probable cause under the Fourth Amendment, found that "[a] policy of sweeping deference
[to the trial court's determination] would permit, '[i]n the absence of any significant difference in
the facts,' 'the Fourth Amendment's incidence [to] tur[n] on whether different trial judges draw
general conclusions that the facts are sufficient or insufficient to constitute probable cause.'" Id.
(quoting Brinegar v. United States, 338 U.S. 171 (1949)). 

 With regard to juror note-taking, however, independent review has not been deemed
necessary. Instead, we leave this decision to the sound discretion of the trial court. See Price,
887 S.W.2d at 954. We conclude that the district court's determination to allow jurors to take
notes does not offend a fundamental right or guaranty overriding the truth-finding function of the
trial. Thus, the DeGarmo doctrine applies, and appellant, by confessing his guilt at trial, is
estopped from challenging this alleged error on appeal.

 We overrule point of error one. 


Error in the Jury Charge

 By his second point of error, appellant argues that the trial court improperly
instructed the jury on all five counts of the indictment. Jury-charge error, while it does not nicely
fit within the laundry list provided by Leday, may at times be a right valued above the truth-seeking function of the trial. For example, when the jury charge in its entirety conveys that the
jury need not find the defendant guilty beyond a reasonable doubt, a defendant's fundamental right
to due process of law is invoked, which requires the judgment to be supported by proof beyond
a reasonable doubt. Such issue may be raised on appeal notwithstanding the DeGarmo doctrine. 
See Leday, 983 S.W.2d at 725 (citing In re Winship, 397 U.S. 358, 361-64 (1970)); see also
Barrera v. State, 982 S.W.2d 415, 417 (Tex. Crim. App. 1998) (jury-charge error offends federal
constitution when, examining charge as a whole, "[t]here is a reasonable likelihood that the jury
understood the instruction to allow conviction on proof insufficient to meet the [beyond a
reasonable doubt] standard").

 Review of jury-charge error in Texas is controlled by Texas Code of Criminal
Procedure article 36.19 (West 1981) and Almanza v. State, 686 S.W.2d 157 (Tex. Crim. App.
1984). See Barrera, 982 S.W.2d at 417. In Almanza, the court of criminal appeals, interpreting
article 36.19, recognized that jury-charge error falls within two categories: "fundamental error
and ordinary reversible error." Almanza, 686 S.W.2d at 171. Fundamental error is error in the
jury charge that is so egregious and creates such harm that the accused has not had a fair and
impartial trial. Id. It occurs only when the asserted error raises a serious question of fundamental
unfairness and considerations of due process. Draheim v. State, 916 S.W.2d 593, 602 (Tex.
App.--San Antonio 1996, pet. ref'd); see also Almanza, 686 S.W.2d at 172 (fundamental error
must "go to the very basis of the case," deprive accused of a "valuable right," or "vitally affect
his defensive theory"); Rose v. State, 724 S.W.2d 832, 834 (Tex. App.--Dallas), aff'd, 752
S.W.2d 529 (Tex. Crim. App. 1987) (contention of fundamental error incorporates due process
rights). Based on these descriptions, the right to have a jury charge submitted free from
fundamental error is clearly a value that parallels those set forth in Leday. Thus, where jury-charge error constitutes fundamental error, the DeGarmo doctrine cannot be invoked to estop an
appellant from raising the error on appeal. 

 We must first determine whether there was error in the jury charge, and then
inquire if it was fundamental error. See Almanza, 686 S.W.2d at 174. Appellant asserts that the
evidence presented by the State at trial establishes that all five counts alleged in the indictment
occurred at one time, and thus the court should have instructed the jury only as to two counts
rather than five. The court of criminal appeals addressed this issue in Vernon v. State, 841
S.W.2d 407 (Tex. Crim. App. 1992):


Appellant's various acts of sexual misconduct, committed against his step-daughter
over a period of six years, do not in fact comprise a single offense under the laws
of Texas. Rather, those who commit multiple discrete assaults against the same
victim, are liable for separate prosecution and punishment for every instance of
such criminal misconduct.



Vernon, 841 S.W.2d at 410 (emphasis added). 

 In this case, N.R. testified that appellant committed various acts against her
beginning when she was approximately six or seven years old and ending when she was twelve.
She stated that about three to four times a week, appellant would penetrate her sexual organ with
his finger and touch her breasts. On about two occasions, appellant touched her sexual organ with
his mouth. When N.R. was approximately ten or eleven, while her foster mother was out of town,
appellant committed all five sexual acts listed in the indictment. N.R. further testified that the
night before she told her counselor of appellant's acts, appellant penetrated her sexual organ with
his finger and fondled her breasts. From this evidence it is clear that appellant committed
"multiple discrete acts" against N.R. consistent with all five counts of the indictment, and thus
was subject to separate prosecution and punishment for each alleged act: three counts of
aggravated sexual assault and two counts of indecency with a child. We conclude that the district
court did not err in instructing the jury as to all counts of the indictment, and thus find no
fundamental error.

 We overrule point of error two. 

Election Requirement

 Appellant contends in his third point of error that the State in its case-in-chief
introduced evidence establishing that appellant engaged in the alleged prohibited acts on many
occasions, and thus should have been required to elect the particular act that the State would rely
on for a conviction. We disagree with the State's argument that appellant is estopped from raising
this point of error under the DeGarmo doctrine.

 As a general rule, where one sexual act is alleged in the indictment and the evidence
at trial establishes that this act occurred on more than one occasion, the State must elect the act
upon which it would rely for conviction. See O'Neal v. State, 746 S.W.2d 769, 771 (Tex. Crim.
App. 1988) (citing Crawford v. State, 696 S.W.2d 903 (Tex. Crim. App. 1985)). Where the State
fails to make such an election, "a defendant might find himself without notice as to which of a
multitude of acts he might be called upon to defend." Id. at 772; see also Crosslin v. State, 235
S.W. 905, 906 (Tex. Crim. App. 1921) (election should not be delayed so long that it would leave
accused in doubt as against which offense he will be called upon to defend); 23A C.J.S. Criminal
Law § 1214 (1989) (prosecution is required to make such an election because accused is entitled
to know which specific act is relied on for a conviction to properly meet the charge). 

 The right to due process reflects the broad premise that "a person cannot incur the
loss of liberty for an offense without notice and a meaningful opportunity to defend." Jackson v.
Virginia, 443 U.S. 307, 314 (1979). Because it was created to afford defendants adequate notice
and an opportunity to defend, the election requirement triggers fundamental constitutional due
process principles. (5) See Cole v. Arkansas, 333 U.S. 196, 201 (1948) ("No principle of procedural
due process is more clearly established than that notice of the specific charge, and a chance to be
heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights
of every accused in a criminal proceeding in all courts, state or federal."). Thus, the right to have
notice of the acts on which the State will rely for a conviction overrides the truth-seeking function
of the trial, and Leday affords appellate review of appellant's third point of error. See Leday, 983
S.W.2d at 725. We will address appellant's argument that the district court erred by not requiring
the State to elect particular acts it would rely upon for a conviction.

 The State may present evidence that the charged acts occurred on multiple
occasions. Worley v. State, 870 S.W.2d 620, 621 (Tex. App.--Houston [1st Dist.] 1994, pet.
ref'd). However, upon the timely motion by the defendant, the State is required to make an
election of those acts upon which it will rely to pursue a conviction. (6) See Worley, 870 S.W.2d
at 621; O'Neal, 746 S.W.2d at 772. In this case, appellant did not move to require the State to
elect until the jury-charge conference, after the close of all the evidence. By the time appellant
made his motion, he could no longer take advantage of the benefits of election, which afford a
defendant notice of the acts that he may be called to defend during his own case-in-chief. (7) We
conclude that appellant's motion came too late, and the district court did not err in failing to
require the State to elect at that point. Cf. O'Neal, 746 S.W.2d at 772 (trial court erred in failing
to require State to make election at time State rested). Moreover, even assuming that the district
court erred in failing to require the State to make an election, we find that such error was harmless
as notice as to what appellant would be required to defend after the evidence had closed would be
of little, if any, assistance. Id. at 772 (absent harm to defendant, error in failing to require State
to make election is not reversible).

 We overrule point of error three.


Ineffective Assistance of Counsel

 In points of error four and five, appellant contends that he was denied effective
assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution and
Article I, section 10 of the Texas Constitution. He asserts that his trial counsel failed to request
the district court to make certain submissions to the jury, did not object to the admission of
evidence, and did not object to portions of the State's jury argument. 

 The proper standard for determining claims of ineffective assistance of counsel
under both the Texas and United States Constitutions is that adopted by the United States Supreme
Court in Strickland v. Washington, 466 U.S. 668 (1984). See Jackson v. State, 877 S.W.2d 768,
770-71 (Tex. Crim. App. 1994); Hernandez v. State, 726 S.W.2d 53, 56-57 (Tex. Crim. App.
1986) (adopting Strickland standard). Under Strickland the defendant must satisfy a two-prong
test, establishing that (1) defense counsel's performance was deficient; and (2) counsel's deficient
performance prejudiced the defense:


First, the defendant must show that counsel's performance was deficient. This
requires showing that counsel made errors so serious that counsel was not
functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. 
Second, the defendant must show that the deficient performance prejudiced the
defense. This requires showing that counsel's errors were so serious as to deprive
the defendant of a fair trial, a trial whose result is reliable. Unless a defendant
makes both showings, it cannot be said that the conviction or . . . sentence resulted
from a breakdown in the adversary process that renders the result unreliable.



Strickland, 466 U.S. at 687. 

 When reviewing a claim of ineffective assistance of counsel under the first prong,
there exists a strong presumption that defense counsel's conduct was reasonable and constitutes
sound trial strategy. Id. at 689. We evaluate the totality of the representation from counsel's
perspective at trial, rather than counsel's isolated acts or omissions in hindsight. See Mayhue v.
State, 969 S.W.2d 503, 510 (Tex. App.--Austin 1998, no pet.) (citing Strickland, 466 U.S. at 689
and Wilkerson v. State, 726 S.W.2d 542, 548 (Tex. Crim. App. 1986)). Appellant has the
ultimate burden to overcome this presumption and demonstrate not only that counsel's
performance was unreasonable under the prevailing professional norms, but that the challenged
action was not sound trial strategy. While we will not speculate as to the reasons behind trial
counsel's actions, "an appellant may overcome the presumption of effectiveness by providing a
record from which we may determine that trial counsel's performance was not based on sound
strategy." Mayhue, 969 S.W.2d at 511 (citing Jackson, 877 S.W.2d at 771-72).

 In this case, appellant has not provided any record from which we may discern trial
counsel's strategy. Although appellant filed a motion for new trial, he did not address any of the
alleged deficiencies that he urges now on appeal in the hearing on his motion. (8) The trial record
does not reveal any evidence to rebut the strong presumption that trial counsel's action might be
considered sound trial strategy. Appellant argues that trial counsel should have requested that the
district court submit count five, alleging that appellant touched the genitals of N.R., as a lesser
included offense of count one, which alleged that appellant penetrated N.R.'s sexual organ with
his finger. However, the evidence at trial established that appellant penetrated N.R.'s sexual
organ with his finger on multiple occasions. (9) "Those who commit multiple discrete assaults
against the same victim, are liable for separate prosecution and punishment for every instance of
such criminal misconduct." Vernon v. State, 841 S.W.2d 407, 410 (Tex. Crim. App. 1992). 
Appellant has thus failed to establish through the record that it was unreasonable for trial counsel,
from his perspective at trial, to determine that the court would not submit count five as a lesser
included offense of count one.

 Appellant complains that trial counsel should have objected to testimony that 
appellant "repeatedly licked the breasts of the complainant, repeatedly rubbed his penis on her leg,
exposed his penis to her, and had her touch his penis until ejaculation" on the grounds that these
were extraneous acts. Evidence of other acts committed by a defendant against a child who is the
victim of aggravated sexual assault or indecency with a child is admissible to prove such matters
as the defendant's state of mind or the previous relationship between the defendant and the child. 
See Tex. Code Crim. Proc. Ann. art. 38.37, § 2 (West 1999). (10) In light of this provision, the
record fails to show that trial counsel's lack of objection to this evidence was inappropriate. 
Appellant has not demonstrated that counsel's omissions were unreasonable under the prevailing
professional norms.

 Finally, appellant contends that trial counsel should have objected to the State's
argument during the punishment phase that, "[t]he only reason there is paper wasted in this charge
or used in this charge for the language of probation or community supervision is because this
convicted child molester wants that as a punishment." (11) Appellant urges that this argument "was
clearly calculated to cause the jury to presume the opinion of the trial judge was that probation was
not an appropriate punishment in this case." The State argues that this comment was nothing more
than a rhetorical argument for a prison sentence. In the absence of a record revealing trial
counsel's strategy, we cannot speculate why counsel did not make an objection to this argument. 
See Jackson, 877 S.W.2d at 771. Thus, appellant has not overcome the strong presumption that
his counsel's strategy was reasonable. See Mayhue, 969 S.W.2d at 511. Moreover, turning to
Strickland's second prong, appellant has not shown how he was prejudiced by this statement. The
record establishes extensive evidence against appellant, including his own admission of guilt. (12) 
Given the strong evidence against him, appellant has not directed this Court to any evidence
showing that the outcome of the punishment phase would have been different had counsel objected
to this one isolated statement made by the State. Therefore, we conclude that appellant has not
met his burden under Strickland.

 We overrule appellant's fourth and fifth points of error.


Motion for New Trial

 Appellant complains in his sixth point of error that, in the interest of justice, the
district court should have granted his motion for new trial. Appellant relies on State v. Dixon, 893
S.W.2d 286 (Tex. App.--Texarkana 1995, no pet.), to support his complaint. In Dixon, the trial
court granted the defendant's motion for new trial because the prosecutor struck all African-American venire members, and trial counsel failed to ask jury panel members if they had a loved-one who had been a victim of sexual abuse, the crime for which the defendant had been charged. 
See Dixon, 893 S.W.2d at 287. The appellate court, reviewing this decision under an abuse of
discretion standard, found that "[t]he trial court may grant a motion of a new trial in the interest
of justice." Id. at 288. Relying on this language, appellant argues that under the facts in this
case, the district court should have granted a new trial. 

 The decision to grant or deny a motion for new trial lies within the sound discretion
of the trial court. See Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995) (citing State v.
Gonzalez, 855 S.W.2d 692, 696 (Tex. Crim. App. 1993)). Thus, "[w]e do not substitute our
judgment for that of the trial court, but rather decide whether the trial court's decision was
arbitrary or unreasonable." Id. 

 During the punishment phase of his trial, appellant testified in his own behalf. In
response to questions by his own attorney, appellant acknowledged that he consulted with his
attorney on that day and during the previous months concerning whether he would testify during
the trial and ultimately decided that he wished to testify. He indicated further that he understood
that he had the absolute right not to testify and that it was his decision to testify. The court then
recessed until the next morning. The following day, appellant continued to testify and confessed
that he was guilty of the crimes for which he had been convicted. When asked why he decided
to admit his guilt, appellant testified that he did not want to mislead his family any longer. The jury assessed punishment, and appellant filed a motion for new trial, alleging
that his decision to testify at the punishment phase of the trial was involuntary. At the hearing on
his motion, appellant testified by way of affidavit that when he spoke with his attorney about
whether to testify, he was very upset about being convicted of the alleged crimes, was unable to
concentrate, and did not understand that his testimony could result in a waiver of error that
occurred during the guilt/innocence phase of the trial. He also testified that the night prior to his
testimony, because of his mental state following his conviction, he was placed in a cold suicide
tank with no clothing. In response, the State called appellant's trial attorney as a witness. 
Counsel related that the night before appellant testified, he and appellant discussed matters
concerning whether appellant should testify, that appellant was coherent, had a rational
understanding of the facts, and was able to communicate to help prepare his defense. The district
court overruled appellant's motion for new trial.

 Unlike Dixon, where the record indicated a clear injustice, the district court here
was confronted with conflicting evidence regarding whether appellant could rationally have made
the decision to testify. While appellant argues that the conditions in jail caused him to testify
involuntarily, the day prior to his judicial confession he stated to the court that he wished to testify
and that he understood that he had the right not to do so. Appellant's trial attorney testified that
he believed appellant to be coherent when he made this choice. The district court was in the best
position to weigh the credibility of the new evidence presented during the hearing on the motion
for new trial against the evidence presented at trial. See Etter v. State, 679 S.W.2d 511, 515
(Tex. Crim. App. 1984) (credibility of witnesses and probable truth of new evidence are matters
to be determined by trial court); cf. Lewis, 911 S.W.2d at 7 (where there is conflicting evidence
on fact issue concerning jury misconduct, trial court determines issue and there is no abuse of
discretion in overruling motion for new trial). Therefore, we decline to find that the district court
abused his discretion in overruling the motion for new trial.

 We overrule the sixth point of error


Violation of Right to Counsel

 Appellant argues in his final point that his right to counsel as guaranteed by the
Sixth Amendment of the United States Constitution was violated when the State questioned him
outside the presence of his attorney. The State submits that appellant did not properly raise an
objection at trial, and thus failed to preserve error. However, the right to the assistance of counsel
is fundamental to the proper functioning of our adjudicatory process such that it cannot be forfeited
by inaction alone. See Marin v. State, 851 S.W.2d 275, 278-79 (Tex. Crim. App. 1993). 
Because there is no evidence that appellant expressly relinquished his right to counsel, we will
consider the merits of appellant's contention. See id. (if defendant wishes to relinquish right to
counsel, he or she must do so expressly).

 The Sixth Amendment provides that "the accused shall enjoy the right . . . to have
the assistance of Counsel for his defense." U.S. Const. amend VI. This provision embodies the
realistic recognition that the average defendant does not have the skill needed to adequately protect
and defend himself when "faced with the prosecutorial forces of organized society" and the
intricacies of substantive and procedural criminal law, and provides a means for which to
administer a fair adversarial system of criminal justice. See Maine v. Moulton, 474 U.S. 159,
169-71 (1985). Thus, once formal charges have been brought and the State has committed itself
to prosecute an individual, a distinct set of constitutional safeguards to preserve the attorney-client
relationship are invoked (13) to ensure that the accused is guaranteed "the right to rely on counsel as
a 'medium' between him and the State." Moulton, 474 U.S. at 176. 

 A fundamental safeguard "provided by the Sixth Amendment is the general
prohibition of state initiated questioning of an accused who is represented by counsel during all
critical stages of criminal proceedings once formal adversarial proceedings have begun, except
where counsel is present or is informed of the interrogation." State v. Frye, 897 S.W.2d 324, 327
(Tex. Crim. App. 1995). A defendant is denied this safeguard when the State deliberately elicits
statements from him in the absence of counsel, and these words are used against him as evidence
at trial. See Massiah v. United States, 377 U.S. 201, 206 (1964). The Sixth Amendment right
to counsel protects against efforts by the State to elicit information by indirect and surreptitious
questioning. The relevant inquiry is whether the State "deliberately elicited" the incriminating
statement. See Linnell v. State, 767 S.W.2d 925, 929 (Tex. App.--Austin 1989, no pet.). 
Deliberate elicitation is "intentionally creating a situation likely to induce [a person] to make
incriminating statements without assistance of counsel." United States v. Henry, 447 U.S. 264,
274 (1980). "[K]nowing exploitation by the State of an opportunity to confront the accused
without counsel being present is as much a breach of the State's obligation not to circumvent the
right to the assistance of counsel as is the intentional creation of such opportunity." Moulton, 474
U.S. at 176.


 Appellant testified during the punishment phase of the trial that he was guilty of the
crimes for which he had been convicted. Following his testimony, appellant called a psychologist
as an expert witness to establish that appellant was remorseful and would be a good candidate for
probation because he confessed his guilt, a "positive indicator" that he could be successfully
treated. On cross-examination, the State, questioning the sincerity of appellant's confession, asked
the witness if his opinion would be different if the day prior to appellant's confession appellant
was still denying that he committed the crime. (14) Appellant's counsel objected to this question,
arguing that appellant had never testified that he did not commit the charged crimes. (15) In
response, the prosecutor told the court that she had spoken with appellant while the jury was
deliberating, and he admitted, in response to her question, that he was still telling his family that
N.R. was lying:

I specifically asked [appellant] yesterday if he was - - when he was waiting on the
jury verdict, if he was still saying that the children were lying [to] his family; and
his response was yes, that he did not admit it yesterday.



 This evidence indicates that the State clearly ignored its duty not to act in a manner
that circumvents the basic protections of the Sixth Amendment right to counsel. See Moulton, 474
U.S. at 176. After appellant's right to counsel had attached, (16) the prosecutor, an agent for the
State, interfered with this right by questioning appellant during jury deliberations. By asking
appellant if he was still telling his family that N.R. was lying, the prosecutor must have known
that she was likely to elicit an incriminating response from appellant. See Linnell, 767 S.W.2d
at 930 (officer must have known making the accused write word would likely elicit incriminating
response). The State then proceeded to use appellant's statement against him to establish that
appellant's confession was not sincere. Therefore, we conclude that the State, in violation of the
Sixth Amendment, knowingly circumvented appellant's right to have counsel present when
questioned.

 While we do not and cannot condone the State's violation of such a fundamental
right of utmost constitutional importance, reversal is not automatic. Some violations of the right
to counsel may be disregarded as harmless error. See Satterwhite v. Texas, 486 U.S. 249, 256
(1988); United States v. Morrison, 449 U.S. 361, 365 (1981). Where the deprivation of the right
to counsel contaminates the entire criminal proceeding, reversal is automatic. Satterwhite, 486
U.S. at 257. However, where the Sixth Amendment violation is readily identifiable and limited
to the erroneous admission of particular evidence at trial, a harmless-error analysis can be applied. 
Id. Here, appellant complains of one particular statement used by the State at the punishment
phase of his trial; thus, we must determine whether this violation constitutes reversible error. See
id. (harmless-error analysis applied when violation limited to testimony of doctor during
punishment phase of trial).

 Under a harmless-error analysis, if it can be shown beyond a reasonable doubt that
the admission of a constitutional error did not contribute to the verdict, the error is harmless and
the verdict may stand. See id. at 256 (citing Chapman v. California, 386 U.S. 18, 24 (1967)); see
also Morrison, 449 U.S. at 367 (dismissal inappropriate where Sixth Amendment violation has
no adverse impact on criminal proceedings). In the present case, the record indicates beyond a
reasonable doubt that the State's use of appellant's statement did not contribute to the punishment
assessed by the jury. We find it of great significance that the same evidence used by the State was
first presented to the jury during appellant's own testimony. Before appellant's psychologist
testified, appellant himself testified that since the allegations against him began, he consistently
had told his family that N.R. was lying, and had misled them until the time that he confessed:


Q. So it wasn't until the Judge read the verdict forms of guilty that you had this
revelation that you [would] come and repent in front of this jury?


[Appellant]. No. No, it was when I saw the reaction that my family had, believing
in me because I misled them.

. . .


Q. And the reaction your family had was that they blamed other people and not
you for these crimes, correct?


[Appellant]. Well, they were thinking [N.R. was] lying.


Q. They were thinking [N.R. was] lying, and they thought I was wrongfully
prosecuting you, correct?


[Appellant]. They thought I was innocent, yes, ma'am.


. . .


Q. And when . . . your wife called you . . . on the phone and told you that [N.R.]
had disclosed the abuse, you called [N.R.] a liar, didn't you?


[Appellant]. Yeah.


Q. And over this past year that you have been awaiting trial, you have represented
to your family that [N.R.] was lying right?


[Appellant]. Yes, ma'am.



 Moreover, the jury was presented with overwhelming evidence in support of the
punishment that it assessed. See Milton v. Wainwright, 407 U.S. 371, 376-77 (1972) (admission
of confession found harmless beyond a reasonable doubt where jury was presented with
overwhelming evidence of confessor's guilt, including three full and unchallenged confessions that
were made by appellant and admissible). Appellant himself specifically confessed to committing
each count alleged in the indictment against N.R. He also admitted sexually abusing N.R.'s sister,
that he knew what he was doing was wrong and that he could go to prison, but he did not stop
because he could not control himself, and that he became "sexually excited by molesting" N.R.
and her sister. When N.R. disclosed the abuse, appellant admitted that he persisted in his denials
to his family until the jury found him guilty.


 In light of appellant's testimony, we conclude that even without the State's improper
question to appellant, the jury would have assessed the same punishment. We hold that any error
in the State's cross-examination of appellant's psychologist was harmless, and overrule point of
error seven.


CONCLUSION

 Having disposed of appellant's points of error, we affirm the district-court
judgment.



 

 Lee Yeakel, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed

Filed: June 4, 1999

Publish
1. The jury assessed punishment at fifty years' confinement for count one, fifty years'
confinement for count three, twenty years' confinement for count four, and twenty years'
confinement for count five
. The sentences run concurrently.
2. In the past, the DeGarmo doctrine has been referred to as "a doctrine of waiver akin to the
doctrine of curative admissibility." See Leday v. State, 983 S.W.2d 713, 720 (Tex. Crim. App.
1998) (quoting McGlothlin v. State, 896 S.W.2d 183, 186 (Tex. Crim. App.), cert. denied, 516
U.S. 882 (1995)). Invoking DeGarmo, the State argues that "appellant's judicial confession
before the jury rendered any error harmless." The court of criminal appeals' most recent
characterization is that "the DeGarmo doctrine is more like estoppel than waiver . . . ." Id. at
720. However cast--waiver, harmless error or estoppel--DeGarmo effectively prevented appellate
review of guilt/innocence phase-errors after a punishment-phase confession.
3. The Texas Court of Criminal Appeals has suggested that a trial court can avoid potential
risks involved in allowing jurors to take notes by evaluating the jury's need to take notes,
informing the parties in advance that note-taking will be allowed, and carefully instructing the jury
when the jury is empaneled and in the jury charge. Williams v. State, 893 S.W.2d 549, 549-50
(Tex. Crim. App. 1995) (citing Price v. State, 887 S.W.2d 949, 954-55 (Tex. Crim. App. 1994)).
4. While appellate courts defer to the trial court's determination of the historical facts of a case
based on an evaluation of credibility and demeanor, the ultimate question of law presented by these
facts is reviewed de novo. See Guzman v. State, 955 S.W.2d 85, 87-89 (Tex. Crim. App. 1997).
5. See, e.g., Fisher v. State, 887 S.W.2d 49, 52 (Tex. Crim. App. 1994) (indictment not
alleging complete offense does not provide adequate notice for due process purposes); LaBelle v.
State, 692 S.W.2d 102, 105 n.2 (Tex. Crim. App. 1985) (due process requires indictment to
inform defendant with sufficient specificity so adequate defense may be prepared). 
6. At times the trial court may, on its own motion, require the State to make an election. See
Worley, 870 S.W.2d at 621 (court ordered State to elect occurrences upon which it would rely for
conviction).
7. See pp. 9-10, supra; O'Neal, 746 S.W.2d at 772. 
8. Appellant's trial attorney testified during the hearing on the motion for new trial. However,
he did not address his strategies concerning appellant's complaints on appeal, and appellant's
counsel at the hearing represented to the district court that there was no allegation of ineffective
assistance and that none would be raised in the hearing.
9. See pp. 6-9, supra.
10. Article 38.37 applies when a defendant is prosecuted for committing an offense under
chapter 21 or 22 of the Texas Penal Code against a child under 17 years of age. See Tex. Code
Crim. Proc. Ann. art. 38.37, § 1(1)-(2) (West 1999).
11. While the proper standard for determination of effectiveness of counsel at the punishment
phase has historically been found in Ex Parte Duffy, 607 S.W.2d 507 (Tex. Crim. App. 1980),
the court of criminal appeals recently overruled the application of the Duffy standard to review
these complaints and determined that the Strickland standard is the proper test to review claims
of ineffective assistance at the punishment phase. See Hernandez v. State, No. 506-97, slip op.
at 1-2 (Tex. Crim. App. April 14, 1999).
12. The State argues that even assuming that trial counsel's performance was deficient,
appellant's confession alone establishes that appellant suffered no prejudice as a result of these
deficiencies. Because claims of ineffective assistance of counsel invoke fundamental individual
rights created by both the United States and Texas Constitutions, appellant is entitled to appellate
review of these claims notwithstanding his confession during the punishment phase of the trial. 
See Leday v. State, 983 S.W.2d 713, 724 (Tex. Crim. App. 1998). Thus, while we will consider
appellant's admission of guilt as evidence, we decline to hold that appellant is estopped from
establishing that he was prejudiced by trial counsel's alleged deficient performance. 
13. See State v. Frye, 897 S.W.2d 324, 327 (Tex. Crim. App. 1995).
14. The following discussion developed:


Q. . . . Doesn't the reason for the fessing up go to the sincerity of the confession?


A. My experience over the last 65 years is that people confess at various times in response
to various pressures and the really important issue is that they do and that they don't just
sit there and say, "I didn't do it, and I don't care what this jury says, I didn't do it, and
you've convicted an innocent man, and you got it all wrong," as opposed to, "Well, I
finally got brought fact-to-face with reality here, and now I have to deal with it."


Q. The words you just spoke, Doctor, about "I didn't do it, and you have convicted an
innocent man," what if those exact words were spoken yesterday, and those words changed
today because this jury is going to decide the fate of that Defendant who spoke those words? 
You don't think that matters in determining the sincerity of the remorsefulness?
15. Counsel specifically argued, "I'm going to object to the form of that question because the
words [the prosecutor] used is a mischaracterization. . . . [T]here is no testimony from [appellant]
yesterday, and his testimony today he - - he did not say that he ever said that."
16. See Fuller v. State, 829 S.W.2d 191, 205 (Tex. Crim. App. 1992), cert. denied, 508 U.S.
941 (1993) (Sixth Amendment right to counsel attaches at inception of adversary criminal
proceedings).



ultimate question of law presented by these
facts is reviewed de novo. See Guzman v. State, 955 S.W.2d 85, 87-89 (Tex. Crim. App. 1997).
5. See, e.g., Fisher v. State, 887 S.W.2d 49, 52 (Tex. Crim. App. 1994) (indictment not
alleging complete offense does not provide adequate notice for due proces